IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MEDICAL MUTUAL INSURANCE COMPANY OF NORTH CAROLINA, 700 Spring Forest Road, Suite 400 Raleigh, NC 27609<br><br>Plaintiff<br><br>v.<br><br>GLOBAL NEUROSERVICES, LLC a/k/a and/or d/b/a GLOBAL NEUROSCIENCES INSTITUTE LLC, 1205 Langhorne Newtown Road Suite 211 Langhorne, PA 19047<br><br>Defendant | CIVIL ACTION NO. _____<br><br>DECLARATORY JUDGMENT |

## **COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Medical Mutual Insurance Company of North Carolina, by and through its undersigned counsel, Thomas, Thomas & Hafer, LLP, hereby files the within Complaint for Declaratory Relief pursuant to 28 U.S.C. § 2201, *et seq.*, and in support thereof states as follows:

### THE PARTIES

1.  Plaintiff, Medical Mutual Insurance Company of North Carolina (MMICNC), is a North Carolina domiciled insurance company with an address of 700 Spring Forest Road, Suite 400, Raleigh, NC 27609.

2.  Defendant, Global Neuroservices, LLC a/k/a and/or d/b/a Global Neurosciences Institute LLC (collectively hereinafter, "GNI"), is a New Jersey limited-liability company with a principal place of business located at 219 N. Broad Street, 7th Floor, Philadelphia, PA 19107 and a registered address of 1205 Langhorne Newtown Road, Suite 211, Langhorne, PA 19047.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the dispute between the parties based on diversity of citizenship, pursuant to 28 U.S.C. § 1332(a)(1) and (2), as Plaintiff is a citizen of the state of North Carolina and Defendant is not a citizen of the same foreign state as Plaintiff.

4. Upon information and belief, the claims of the underlying plaintiffs, as described later in this Complaint, against Defendant involve an amount in controversy in excess of the jurisdictional limit of $75,000.00.

5. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to the claim occurred in the Eastern District of Pennsylvania.

6. This Court has personal jurisdiction over the Defendant because the Defendant regularly conducts business within the Commonwealth of Pennsylvania.

7. An actual and justiciable controversy exists between the parties with respect to the rights of the parties under a policy of liability insurance.

## FACTS

*The Underlying Lawsuits*

8. This matter arises out of a series of incidents involving Dr. Ricardo Alberto Cruciani, a licensed medical professional who at all times relevant hereto maintained professional offices in Philadelphia, Pennsylvania and was employed by Drexel University College of Medicine and Drexel Neurosciences Institute ("DNI"). (*See* Lead Consolidated Case: *Jane Doe 1 v. Drexel University et al.* No. 191201876, attached hereto as **Exhibit A**.)

9. In several consolidated lawsuits pending in Philadelphia County Court of Common pleas, former patients of Dr. Cruciani allege that they were sexually assaulted by Dr.

Cruciani and, as part of his abuse, Dr. Cruciani prescribed inordinate amounts of pain-management drugs to the patients. (*See id.*)

10. Dr. Cruciani faced criminal charges and has since committed suicide.

11. On or about December 17, 2018, the underlying plaintiffs filed their respective Complaints against Dr. Cruciani, GNI, and other defendants, and then on or about June 19, 2019, the underlying plaintiffs filed Amended Complaints.

12. Although certain details are unique to each underlying plaintiff, the Amended Complaints are largely similar in terms of their substance and claims against GNI.

13. The underlying plaintiffs alleged, incorrectly, that Dr. Cruciani became an employee of GNI on or about February 1, 2016 (*see, e.g.,* Doe 1 Sec. Am. Compl. ¶ 34); to the contrary, Dr. Cruciani was an employee of Drexel University College of Medicine and DNI.

14. The underlying plaintiffs also alleged that before Dr. Cruciani was purportedly employed at GNI, he overprescribed or mis-prescribed pain medications to several patients, including the underlying plaintiffs, causing them "to become addicted and dependent on these medications." (*Id.* ¶ 31.)

15. The underlying plaintiffs further alleged that some of Dr. Cruciani's patients reported Dr. Cruciani's sexual misconduct, including sexual assault, to Dr. Cruciani's previous employer(s). (*Id.* ¶ 32.)

16. Plaintiffs also alleged, incorrectly, that GNI "recruited [Dr. Cruciani] without appropriately vetting, screening[,] or investigating his background" (*see id.* ¶ 36.); to the contrary, Dr. Cruciani was an employee of Drexel University College of Medicine and DNI.

17. Plaintiffs alleged, incorrectly, that while under his care at GNI, Dr. Cruciani committed various intentional, criminal acts of sexual misconduct like forcibly kissing, groping,

or raping the underlying plaintiffs (*see id. passim*); to the contrary, Dr. Cruciani was an employee of Drexel University College of Medicine and DNI.

18. By their Amended Complaints, the underlying plaintiffs have attempted to assert claims against GNI for "Negligence, Recklessness, Willful Conduct, Wanton Conduct and Gross Negligence" (Count I); "False Imprisonment" (Count III); "Medical Malpractice" (Count IV); "Corporate Negligence" (Count VI), and "Intentional Infliction of Emotional Distress" (Count VII). (*See id.*)

19. Against Cruciani, the underlying plaintiffs have asserted claims for Assault and Battery (Count II), False Imprisonment (Count III), Medical Malpractice (Count IV), and Intentional Infliction of Emotional Distress (Count VII). (*See id.*)

20. The underlying plaintiffs seek to recover compensatory and punitive damages from both GNI and Dr. Cruciani as well as the other named defendants.

21. In response to Plaintiffs' Amended Complaints, Drexel University and DNI filed cross-claims against GNI for negligence, breach of contract, and indemnification.

***Insurance Policy Issued by MMICNC to GNI***

22. From June 15, 2017, through June 15, 2018, MMICNC covered GNI (designated therein as "GNI Neuroservices LLC") under Medical Professional Liability Insurance Policy number 1-GLCM 001115 (the "Policy"). (A true and correct copy of the Policy is attached hereto as **Exhibit B**.)

23. The Policy maintained a "retroactive date" of June 15, 2015, meaning that it only responded to claims against an insured that arose from events taking place on or after that date.

24. GNI submitted the claims asserted in the underlying consolidated actions to MMICNC for coverage under the Policy.

25. MMICNC agreed to defend the GNI, subject to a reservation of rights on the part of MMICNC to disclaim coverage in the event the claims become limited to those for which no coverage exists under the policy.

26. MMICNC filed a petition in the underlying lawsuits and was granted a right to intervene in the underlying lawsuits to participate in discovery on a limited basis to ensure that facts are developed that are germane to the insurance-coverage issues and to ensure those facts are determined at the time of trial, if necessary, through the use of specific instructions, interrogatories, or special verdict forms.

27. With discovery complete, it is apparent that no coverage exists under the policy for the claims asserted by the underlying plaintiffs against GNI.

28. The Policy's Medical Professional Liability Insurance Coverage Part is written on a claims-made basis and includes Entity Liability (EL) and Physician's and Surgeon's Professional Liability (PL) coverages.

29. The Policy's EL coverage provides that:

[MMICNC] will pay, on behalf of an insured all sums that an insured shall become legally obligated to pay as damages because of:

(a) **bodily injury** or **property damage** caused by a **medical incident** to which this insurance applies;

(b) injury arising out of voluntary or mandated participation by the **insured** in a formal process of credentialing, quality assurance, peer review or utilization review, except that such insurance as is afforded for claims arising out of participation in a formal process of credentialing, quality assurance, peer review or utilization review shall be excess over any other insurance, and provided that such coverage is offered only to the extent permitted by law.

With respect to any **insured**, this insurance applies to **medical incidents**

occurring on or after the retroactive date and on or before the termination date applicable to such **insured** shown in the Declarations or on any attached schedule or endorsement only if the **claim** is first made against such **insured** during the **policy period** and before the termination date of such insured's coverage on or before the expiration of any applicable extended reporting period and the **claim** is reported to the Company by the insured on or before such termination date or the expiration of any applicable extended reporting period.

The insurance afforded in Entity Liability (EL) subparagraph (b) above shall be excess over any **other insurance.**

30. The Policy defines an "insured" to include the "named insured," and with respect to the EL coverage, "the **insured entity**, and any officer, partner, member, or stockholder thereof with respect to the acts or omissions of others, provided that no officer, partner, member, or stockholder of an **insured** entity shall be an insured under this subparagraph with respect to liability for his or her personal acts."

31. An "insured" under the PL coverage includes "any **physician** for whom such coverage is afforded under this policy as indicated in the Declarations page."

32. The Policy defines "bodily injury" to mean "physical injury, sickness or disease sustained by a person," which includes "mental anguish, mental injury, shock, fright or death if any of these results from physical injury."

33. A "medical incident" is defined to include "[a] single act or omission or a series of related acts or omissions (including, but not limited to, multiple misdiagnoses) directly resulting from the rendering of or failure to render professional health care services to a single person."

34. "Professional health care services" are defined as "any professional health care service immediately incident to the care of patients including, but not limited to, the furnishing of food, beverages, medications or appliances in connection with such services and the postmortem handling of human bodies."

35. The Policy defines a "claim" to mean "(a) Written notification received by an insured of a suit or receipt by an insured of any other request for compensation made by or on behalf of an injured party to which this insurance applies; or (b) any act or omission that the insured reasonably believes may result in a suit or other request for compensation made by or on behalf of an injured party to which this insurance applies."

36. The Policy's exclusions specify, in pertinent part, that coverage does not apply

    (e)    to any **claim** for punitive or exemplary damages, treble damages, any sum awarded in excess of compensatory damages, or any multiple of compensatory damages;

....

    (j)    to any **claim** arising from the process of formation, performance or breach of an actual or alleged contract or agreement, whether written or oral;

    (k)    to any **claim** arising from liability for the acts of another assumed by the insured under any contract or agreement, whether written or oral;

    (l)    to any **claim** arising from the performance of any dishonest, fraudulent, deceitful, criminal or malicious act, or omission, by or with the knowledge or consent of, or at the direction of, an insured;

    (m)    to any **claim** for **bodily injury** or **property damage** arising from the performance by an **insured** of any intentional or willful acts, except those taken by an insured in good faith in the furnishing of **professional health care services**;

....

    (q)    to any **claim** made against an **insured:**

        (1)    for which the **insured** is entitled to indemnity or payment or both by reason of having given notice of any circumstance which might give rise to a **claim** under any **other insurance;**

        (2)    arising from any pending or prior litigation known to the insured as of the effective date of this policy, as well as all future **claims** or litigation based upon such pending or prior litigation or derived from the same or essentially the same facts (actual or alleged) that gave rise to the prior or pending litigation; ...

....

    (u)    to any **claim** that results from or is aggravated by alleged or actual sexual misconduct. However:

 (1) we will defend any claim directly resulting from sexual misconduct, except that no defense will be provided to any **insured** who admits or is adjudged or is otherwise proven to be the perpetrator. We shall be entitled to be reimbursed by an **insured** who is adjudged or is otherwise proven to be the perpetrator for any expenses that we have incurred in defending such **claim.**

 (2) we will pay damages on behalf of any **insured** other than:

  (a) the alleged perpetrator or perpetrators,
  (b) any **insured** who knew about the misconduct and failed to stop it.

(v) to any **claim** alleging:

 (1) violation by any **insured** of any statute, law, ordinance, or regulation prohibiting discrimination, harassment or humiliation including but not limited to such **claims** based on race, creed, color, age, sex, sexual preference, physical appearance, marital status, pregnancy, physical or mental disability, or national origin;

....

 (3) violation of any other federal, state or local law, regulation or ordinance including, but not limited to, the practice of medicine without a license.

....

(z) to any **claim** arising out of:

 (1) an **insured's** activities as a proprietor, superintendent, hospital administrator, nursing home administrator, or executive officer of any hospital, nursing home, rehabilitation facility, sanitarium or clinic with bed and board facilities or laboratory or business enterprise not listed on the Declarations page as an **insured** (but this exclusion does not apply with respect to an X-ray or pathological laboratory utilized to provide medical professional services within a physician/patient relationship within the insured's practice); or

 (2) any activity or enterprise not mentioned in paragraph (1) of this exclusion, whether or not related to patient care and/or treatment, if such activity or enterprise is not involved in the delivery of health care services to patients on an individual basis and within a direct professional provider-patient relationship. This exclusion does not apply if the **insured's** specialty listed on the Declarations page is administrative medicine.

(See Exhibit B, attached hereto.)

37. The policy provides the following definition:

**Medical incident** means a single act or omission or a series of related acts or omissions (including, but not limited to, multiple misdiagnoses) directly resulting from the rendering of or failure to render **professional health care services** to a single person. For the purposes of this definition, any single act or omission or series of related acts or omissions directly resulting from the rendering of or failure to render **professional health care services** to a mother and child or fetus (or children or fetuses) from conception through post partum care shall constitute a single **medical incident.**

(See Exhibit B, attached hereto.)

38. The claims against GNI do not fall within the scope of the Policy's EL coverage because EL coverage applies to claims alleging "bodily injury" arising from a "medical incident" as those terms are defined above.

39. The underlying plaintiffs are claiming damages as a result of Dr. Cruciani's alleged improper sexual conduct and at no time was Dr. Cruciani ever acting as an employee of GNI; nor was he providing services at any facility owned or operated by GNI.

40. The allegations of Dr. Cruciani's sexual misconduct or GNI's vicarious liability in connection therewith do not as a matter of law arise from professional healthcare services.

41. Moreover, allegations that GNI improperly hired and retained Dr. Cruciani, failed to prevent and protect plaintiffs from Dr. Cruciani's misconduct, or made misrepresentations regarding Dr. Cruciani's history, also do not constitute professional healthcare services and are expressly excluded as activities that are not involved in the direct delivery of health care services to patients on an individual basis within a direct provider-patient relationship.

42. The same is true with respect to Drexel's and DNI's claims that GNI has breached its contract or its alleged duty to indemnify those parties.

43. The Cross Claim asserted by Drexel and DNI does not allege that Drexel and DNI suffered bodily injury, but instead seeks purely economic damages as a result of GNI's alleged negligence, breach of contract and purported duty to indemnify Drexel and DNI, and such economic damages resulting from contract and indemnity claims are not covered by the Policy.

44. In addition to the lack of a qualifying medical incident attributable to GNI, so as to trigger coverage under the policy, the claims asserted against GNI are precluded from coverage by the above-referenced Policy exclusions.

45. Punitive damages are excluded from coverage by Policy Exclusion (e).

46. Pursuant to Exclusion (j), the policy does not apply to claims arising from a breach of an agreement as alleged by Drexel and DNI allege in their cross claim.

47. Any obligation GNI may have to reimburse or indemnify Drexel or DNI for their own acts is also excluded by Policy Exclusion (k).

48. Intentional conduct by both Dr. Cruciani and anyone else at GNI was not associated with the good faith providing of professional health care services, and, therefore, such claims fall within the scope of Policy Exclusion (l).

49. It is also clear that the underlying claims all result from or were aggravated by alleged or actual sexual misconduct that was criminal in nature, thereby implicating Policy Exclusion (v), which precludes coverage for violation of laws.

50. The underlying claims all result from or were aggravated by alleged or actual sexual misconduct, which are precluded by Policy Exclusion (u).

51. Exclusion (z) of the policy also excludes coverage for "an insured's activities as a[n] executive officer of any … business enterprise not listed on the Declarations page as an insured" and further excludes "any activity or enterprise…, whether or not related to patient care

and/or treatment, if such activity or enterprise is not involved in the delivery of health care services to patients on an individual basis and within a direct professional provider-patient relationship" unless "the insured's specialty listed on the Declarations page is administrative medicine."

52. The factual record as developed in discovery in the underlying matters establishes that the alleged conduct of both Dr. Cruciani and alleged administrative failures of Don Damico and Dr. Erol Veznedaroglu were in the course and scope of those individuals acting as officers or directors of DNI and/or Drexel University, not GNI.

53. Further, even if such administrative failures occurred while either Don Damico and Dr. Erol Veznedaroglu was acting as an employee officer or director of GNI (which they were not), the policy nevertheless expressly excludes any claim arising out of such activities, as they not involved in the direct delivery of health care services to patients on an individual basis within a direct provider-patient relationship and neither is listed on the Policy Declarations with a specialty in administrative medicine.

54. As such, there is no coverage available for any acts in their capacity as officers of DNI or any entity other than GNI.

55. Moreover, although the policy in Exclusion (u), as noted above, provides that MMICNC "will defend any claim directly resulting from sexual misconduct, except no defense will be provided to any insured who admits or is adjudged or is otherwise proven to be the perpetrator" and that MMICNC "will pay damages on behalf of any insured other than (a) the alleged perpetrator or perpetrators [or] (b) any insured who knew about the misconduct and failed to stop it," the claim must nevertheless first qualify under the initial grant of coverage and must not otherwise be subject to exclusion under the policy.

56. An exception to an exclusion cannot be transformed into a grant of coverage. *See Unitrin Direct Ins. Co. v. Esposito*, 751 F. App'x 213, 215 (3d Cir. 2018) ("Simply put, exceptions to policy exclusions cannot create or expand insurance coverage.")

57. As set forth above, the underlying claims do not consist of claims for liability against GNI for a medical incident and are otherwise excluded.

58. Further, any claims against GNI based on allegations that its administrators knew about Dr. Cruciani's sexual misconduct but failed to stop it are, in any event, also subject to exclusion.

59. With the factual record having been developed through the completion of discovery in the underlying actions, it is now apparent that no coverage is available for the claims as presented.

60. Although trial in the underlying matter will provide further evidence that no coverage is available to GNI for the asserted claims, a judicial determination of the unavailability of coverage may be rendered at this time.

**WHEREFORE,** Medical Mutual Insurance Company of North Carolina respectfully requests Declaratory Relief, pursuant to applicable law, in the form of an Order that:

a. Medical Mutual Insurance Company of North Carolina has no duty under Policy No. 1-GLCM 001115, or otherwise, to defend or to pay defense costs to or on behalf of Global Neurosciences Institute or Global Neuroservices LLC, in relation to any and all claims asserted in the underlying litigation, consolidated under Lead Consolidated Case: *Jane Doe 1 v. Drexel University et al.* No. 191201876, pending in the Court of Common Pleas of Philadelphia County;

b. Medical Mutual Insurance Company of North Carolina has no duty under Policy No. 1-GLCM 001115, or otherwise, to indemnify Global Neurosciences Institute or Global Neuroservices LLC, in relation to any and all claims asserted in the underlying litigation, consolidated under Lead Consolidated Case: *Jane Doe 1 v. Drexel University et al.* No. 191201876, pending in the Court of Common Pleas of Philadelphia County;

and

c.  Any and all other relief deemed just and proper by this Honorable Court.

Respectfully submitted,

**THOMAS, THOMAS & HAFER, LLP**

*[signature]*

Gregory C. Kunkle, Ph.D., Esquire
1550 Pond Rd., Suite 210
Allentown, PA 18104
610-332-7015
gkunkle@tthlaw.com
Attorney Identification No. 90005
*Attorneys for Plaintiff,*
*Medical Mutual Insurance Company of*
*North Carolina*

DATE:  April 17, 2024